**E. C. SHEVLIN CO. v. UNITED STATES.**

No. 10802.

Circuit Court of Appeals, Ninth Circuit.

Dec. 21, 1944.

See also 146 F.2d 616.

Hampson, Koerner, Young & Swett and James C. Dezendorff, all of Portland, Or., for appellant.

Norman M. Littell, Asst. Atty. Gen., and Vernon L. Wilkinson and Fred W. Smith, Attys., Dept. of Justice, both of Washington, D. C., for appellee.

Before GARRECHT, DENMAN, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment of date December 10, 1943 awarding damages to appellant in a condemnation of appellant's timber land in the state of Oregon in a proceeding under the act of Congress of March 27, 1942, and prior acts thereby amended, 50 U.S.C.A.Appendix, § 632. The ground of the appeal is that the District Court was without power to render the judgment from which this appeal is brought. There was a prior final judgment in the same case from which the appellee had not appealed and which, it is claimed, was illegally set aside because (1) it is a consent judgment; (2) if, since rule 81(a) (7), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, excludes condemnation proceedings, the conformity act [1] applies to such action by the court, the court order is based on a ground not permitted by the Oregon law after the expiration of the term of court in which the judgment was rendered; (3) it is in an ex parte proceeding and on its face invalid because for an asserted cause not warranting it; and (4) if the general federal law applies. the judgment was set aside after the ex-

---

[1] 40 U.S.C.A. § 258. "Same; procedure "The practice, pleadings, forms and modes of proceedings in causes arising under the provisions of section 257 of this title shall conform, as near as may be, to the practice, pleadings, forms and proceedings existing at the time in like causes in the courts of record of the State within which such district court is held, any rule of the court to the contrary notwithstanding."

piration of the term in which it was rendered.

Prior to the judgment appealed from a judgment in favor of appellant had been rendered and set aside under the following circumstances. Before filing the petition for condemnation of the land, appellant received from E. M. Peck of the Army Engineers a notice of intent to condemn the lands and asking possession before September 1, 1942. Appellant replied acceding to the request for possession and asking the price the government proposed to pay.

On August 21, 1942, Peck replied:

"A competent timber cruiser has been employed to cruise the timber and as soon as his report is completed option papers will be prepared and forwarded to you for approval and signature."

On October 13, 1942, an option in favor of the government to purchase the property for $10,546.50 and Form 1034 were sent to appellant for execution and return.

On November 17, 1942, the option and the Consent to Entry of Final Judgment in Condemnation and Petition to Withdraw Funds, duly executed by appellant, were returned to Peck.

On December 3, 1942, the government filed its petition to condemn the property, a Declaration of Taking, and deposited in the registry of the court the option price of $10,546.50, which was alleged to be the estimated just compensation for the property involved.

On March 1, 1943, counsel for the government filed Form No. 1034—appellant's Consent to Entry of Final Judgment in Condemnation and Petition to Withdraw Funds—and W. B. Wallace, a witness presented by the government, was duly sworn and testified in open court that he was Chief of the Planning and Appraisal Section of the Real Estate Branch of the Army Engineers; that he was familiar with the property involved; that in his opinion the reasonable and fair market value of the land and timber on December 3, 1942, was $10,546.50.

The court, upon motion of the counsel for the government, thereupon signed and entered an order (1) fixing the value of the land taken at $10,546.50, (2) disbursing the funds to appellant, and (3) of final judgment in condemnation.

The money was thereupon drawn down by appellant, and the proceeding was closed insofar as all parties were concerned.

The term of the District Court expired on July 4, 1943. Thereafter, on September 3, 1943, without notice to appellant and more than six months from the entry of the judgment and more than sixty days after the expiration of the term in which the judgment was entered, counsel of the government filed a "Motion for Vacating Order Fixing Value and Disbursing Funds and Final Judgment in Condemnation."

On the same day and apparently at the same time—and likewise without notice to appellant—the trial court entered an order purporting to vacate the Order Fixing Value and Disbursing Funds and Final Judgment in Condemnation previously entered on March 1, 1943. Counsel for the government was directed to mail to appellant a copy of the order.

The sole ground of the motion was "* * * that *plaintiff believes* it expedient to introduce further testimony * * * relating to the fair market value of the property, including the merchantable timber thereon, taken in this proceeding." [Emphasis supplied] The sole ground stated by the court for the order setting aside the judgment is that the *United States, not the court,* "believes it expedient to introduce further testimony in this cause relating to the fair market value of the property, including merchantable timber thereon, taken in this proceeding: * * *"

Appellee contends that the conformity act applies and that the Oregon law is controlling. It claims to come within the Oregon statute, since the motion was made within a year after the notice of the entry of judgment.

Nothing in the motion stated or related to the inadvertence, mistake, surprise or neglect which, under the Oregon law, permits the setting aside of a judgment and the granting of a new trial within a year after notice thereof, section 1-1007, Oregon Compiled Laws Annotated, providing:

"The court * * * may also, in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect."

Appellant contends that under the Oregon law it is only on one of these four stated grounds that the court has "power or authority to set aside or vacate a decree on motion after the expiration of the term, and its order attempting [otherwise] to do so is consequently void and reviewable on appeal." Stites v. McGee, 37 Or. 574, 577, 61 P. 1129. Further that court states, what is universally true in Anglo-Saxon jurisprudence, that, assuming any one of the statute's grounds is claimed, "It is certainly not a proper ground of inquiry on an ex parte motion to vacate the decree."

This case, principally relied on by appellant, is not mentioned, much less distinguished or shown overruled in appellee's brief. For reasons later stated, we do not consider it necessary to dispose of this contention of appellant.

The District Court has given no opinion in which it states its reason for setting aside a judgment in favor of one party on the ex parte motion of the losing party because the losing party, not the court, believes it advisable to introduce further evidence. Appellee seeks to justify such action because the United States is the losing party. Its brief states:

"Even if it be conceded that, on the basis of prior cases, the technical position of the United States, simply as a litigant, is doubtful, *it must be remembered that the trial court was here dealing with subject matter affected with a public interest.* In this situation, the recent decision in Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250, is enlightening." [Emphasis supplied.]

This is an unwarrantable statement from attorneys representing the United States. To describe as a "doubtful" "technical position" the deprivation of a person of his property in a judgment, in an ex parte proceeding initiated by the United States, that person's losing opponent,—that is without due process—is more than a mere understatement. Whatever may be the favored position of the state in German litigation, the United States, before its courts, is no super personality dominating opposing litigants.

The character of the "public interest" of the United States in a condemnation proceeding is determined by statute. In seeking to establish its statutory rights the United States is exactly like any other litigant. The opponents of the United States are as much entitled to notice as it would be in the reversed situation. Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250, cited by appellee, was not an ex parte proceeding.

Appellee at the hearing of the appeal from the order setting aside the first judgment sought to explain this ex parte action of the court on the ground that there was a suspicion in the court's mind, undisclosed in the record, of fraud on the part of the successful litigant. If this penetration into the judicial mind be warranted, and its conclusions be correct, then the remedy after the term is in a motion or proceeding in the nature of coram nobis, (Pickett's Heirs v. Legerwood, 7 Pet. 144, 147, 8 L.Ed. 638; United States v. Mayer, 235 U.S. 55, 69, 35 S.Ct. 16, 59 L.Ed. 129), or in a suit in equity to restrain the enforcement of the judgment or for return of moneys' paid under it. The remedy is not an ex parte proceeding, much less one in which no cause is shown.

Since this damaging suggestion was made by the government in open court, it is but fair to take notice of a public statement by Mr. Norman Littell, the Assistant Attorney General then in charge of the Lands Division of the Department of Justice, and the attorney responsible for the briefs in this case. There was an investigation by the Federal Bureau of Investigation after which Mr. Littell caused to be published in the Portland, Oregon, papers concerning appellant "that there is no evidence of fraud, collusion or conspiracy to defraud the Government." [2]

It is unnecessary to explore the extent of the powers of a District Court to set aside a judgment and order a new trial upon facts in the record and thereby within the cognizance of the court. Whatever that power, the face of the order here shows at least an abuse of discretion, in granting it ex parte on the sole ground that the losing and moving party "believes it expedient to introduce further testimony." Cf. Mattox v. United States, 146 U.S. 140, 147, 13 S.Ct. 50, 36 L.Ed. 917. The appellant's contention stated third

---

[2] This statement appears in appellant's brief and is not challenged by the government's reply.

above that the order is intrinsically invalid is sustained.

 We also agree with appellant's contention stated as fourth above, that even if the order were otherwise valid the court had no power to make it after the expiration of the term of the District Court. In the recent case of Murphy v. United States District Court, 145 F.2d 1018, this court had before it the question whether the conformity act applied in a condemnation of California lands. It was claimed that the United States District Court for the Northern District of California had acted beyond its jurisdiction in granting a motion for a new trial after the sixty day period within which California courts must act on the motion. It was there held that "On motions for new trial, federal courts are not affected by the conformity statute nor state statutes or practice." What is there said applies as well to setting aside a judgment. It is a question of the court's power and not of procedure, and the general federal law controls.

Except under the new Rules of Civil Procedure, inapplicable here, a new trial ordered after the expiration of the term of court in which the judgment is rendered is invalid, unless upon motion made within the term. United States v. Mayer, 235 U.S. 55, 67, 35 S.Ct. 16, 59 L.Ed. 129, and cases cited. Cf. Sprague v. Ticonic Bank, 307 U.S. 161, 170, 59 S.Ct. 777, 83 L.Ed. 1184. As seen, here the motion was made over sixty days after the term had expired. The first judgment, entered on March 1, 1943, is valid and binding on the parties thereto. The judgment appealed from is reversed.

HEALY, Circuit Judge (concurring).

I agree with the result of the main opinion and for the most part with what is said in it.

There is, however, no occasion for making a mystery out of the action taken below. The trial court set aside its original judgment in this and in certain companion cases because of the belief that fraud, or imposition amounting to fraud, had probably been practiced upon it and upon the United States at the time those judgments were entered. The ensuing jury trials appear not to have borne out this belief. In this and in some of the companion cases the verdicts were for somewhat lesser amounts than originally awarded. In others the awards appear to have been larger than before. These discrepancies proved nothing except that honest differences of opinion as to values are possible of occurrence.

I am not prepared to say that under no circumstances are the district courts without power and authority to take action of the sort taken here—even after the expiration of the term. But I do agree that under no circumstances may they take such action without a tangible showing in support of it and without giving the judgment holder an opportunity to be heard. Had this course been pursued in the present instance it seems unlikely that the original judgments would have been disturbed.